UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
JINJIT, LTD. d/b/a MISSESDRESSY,

                Plaintiff,

      v.

JOVANI FASHION, LTD.,

                         14-CV-2585 (DAB)
                Defendant.     <u>MEMORANDUM AND ORDER</u>
------------------------------------------X
JOVANI FASHION, LTD.

                Counterclaim and
                Third-Party Plaintiff,

      v.

JINJIT, LTD. d/b/a MISSESDRESSY and
MEYTAL SUTTON,

                Counterclaim-Defendant
                and Third-Party Defendant.
------------------------------------------X
     DEBORAH A. BATTS, United States District Judge

     Before the Court is Plaintiff Jinjit, Ltd. d/b/a

MissesDressy ("MissesDressy") and Third-Party Defendant Meytal

Sutton ("Sutton")'s joint Motion to Dismiss in part Jovani

Fashion Ltd. ("Jovani")'s Counter and Third-Party Claims

pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion").

For the reasons stated below, the Motion is GRANTED and Jovani's

Counter and Third-Party Claims Two through Thirty-Four are

DISMISSED.

I.   Background

MissesDressy is a retailer of dresses, and Jovani is a dress designer.  (See, e.g., Motion at 1.)  MissesDressy used its internet website to sell dresses made by Jovani.  (Id.)  The only written contract between the Parties is a form agreement used to license customers the right to download photographs from Jovani's website to advertise dresses that the customer has ordered ("Photograph Use Agreement").  (Id.)  At some point, the relationship turned sour.  The Parties disagree about who is at fault, however all Parties agree that Jovani ultimately filed notices under the Digital Millennium Copyright Act ("DMCA") with MissesDressy's internet services provider to stop MissesDressy from using Jovani's photos of Jovani dresses.  (Id.)  On April 11, 2014, MissesDressy filed a Complaint against Jovani asserting claims for (1) misuse of the DMCA, in violation of 17 U.S.C. § 512(f), (2) copyright misuse, (3) breach of contract, and (4) unjust enrichment ("Complaint").  (ECF No. 2.)  On May 21, 2014, Jovani filed an Answer to the Complaint and Counterclaims against MissesDressy and Third-Party Claims against Third-Party Defendant Meytal Sutton (collectively, "Counterclaim Defendants"[1] or "Movants").  (ECF No. 9.)  Jovani's Counter and Third-Party claims consist of two breach of contract

---

[1] Although Sutton is technically a Third-Party Defendant, the Court collectively refers to Sutton and MissesDressy as Counterclaim Defendants for convenience.

claims against MissesDressy, thirty-one claims of copyright infringement against MissesDressy and Sutton, and one claim of trademark infringement against MissesDressy.  MissesDressy and Sutton jointly moved to dismiss one of the breach of contract claims against MissesDressy, the thirty-one copyright infringement claims against both Counterclaim Defendants, and the trademark infringement claim against MissesDressy ("Motion").  (ECF Nos. 15-17.)

For purposes of the Motion, the following facts are taken from the Counterclaims and, to the extent applicable, are assumed to be true.  (See, e.g., Paramount Pictures Corp. v. Puzo, No. 12 Civ. 1268(AJN), 2012 WL 4465574, at *1 (S.D.N.Y. Sept. 26, 2012).)

Meytal Sutton is the president of MissesDressy. (Counterclaims ¶ 5.)  MissesDressy became a customer of Jovani in February of 2011 by opening an account with Jovani to become an authorized online retailer.  (Id. ¶ 7.)  "In October 2012, MissesDressy applied for a Photograph Use Agreement with Jovani."  (Id. ¶ 14.)  Jovani did not attach the Photograph Use Agreement to its Answer and Counter and Third-Party Claims, however Movants included the Agreement with their materials in support of the Motion.  Attached to the Motion is a Declaration executed by Meytal Sutton.  (ECF No. 16.)  Exhibit A to the Sutton Declaration is a copy of the Photograph Use Agreement.

(<u>Id.</u>, Ex. A.) The Photograph Use Agreement is a two-page form agreement between Jovani and a Jovani customer drafted by Jovani. (<u>See</u> <u>id.</u>) On the first page of the Agreement are sections where the Customer identifies itself, its address, its Jovani account number, and its email address. (<u>Id.</u>) There is also a section for the Customer to describe the "purpose" of the use of the Jovani photographs. (<u>Id.</u>) The Photograph Use Agreement provides the following example in parentheses: "Example: 'to post on our company website' or 'to make a poster for our store.' If these images will be posted on your company's website, then also provide the URL." (<u>Id.</u>) The subsequent section is where the Customer lists the "Collection(s) Ordered." (<u>Id.</u>) Written in parentheses below is the following: "Note, only list collections from which you have placed orders from, ex: 'Prom'. If you list a collection that you have not ordered from, it will be crossed off the list." (<u>Id.</u>)

The Photograph Use Agreement then reads as follows:

1. GRANT
   A. Company hereby grants the Customer permission to download from the FTP website photographs of Jovani Dresses, <u>only</u> from the collection(s) listed above ("Photographs").
   B. The Customer may <u>not</u> download any other picture(s) from any other collection(s) not listed above.
   C. The Customer may <u>only</u> use the photographs for advertising purposes, <u>only</u> on the company's official website or official social media pages. The Customer may not crop or otherwise remove or

      hide the Jovani logo or watermarks on the
      Photographs.

D.  The Customer may <u>not</u> use the Photographs for any
      other purpose without the prior written consent
      of the Company.

E.  The Customer may under no circumstances forward
      the Photographs or the FTP username and password
      to any other company, customer, or individual
      that is not directly employed by Customer.

(<u>Id.</u>)  "Jovani provides the Photograph Use Agreement to its existing accounts only." (Counterclaims ¶ 14.)  "As part of the Photograph Use Agreement a Jovani customer with a Jovani account may use Jovani's copyrighted images on its website" to advertise dresses that the Customer has already ordered.  (<u>Id.</u> ¶¶ 15; <u>see also id.</u> ¶ 18 ("Customers only get access to the photos of collections they actually have or have ordered.").)  "Customers who receive approval for the Photograph Use Agreement also receive a username and password from Jovani."  (<u>Id.</u> ¶ 16.)  "Passwords provide access to the specific collections the customer is approved for, as part of the Photograph Use Agreement."  (<u>Id.</u> ¶ 18.)  "After approval of its application for the Photograph Use Agreement, MissesDressy also received a username and password, which granted MissesDressy as an existing customer of Jovani, permission to download from the FTP[2] website copyrighted photographs of Jovani dresses from specific

---

[2] Jovani does not define the term "FTP," however the Court understands "FTP" to refer to a file transfer protocol that allows transfer of files electronically using a computer network.

collections the customer is approved for, as part of the Photograph Use Agreement." (<u>Id.</u> ¶ 17.)

The Photograph Use Agreement contains an integration clause titled "Entire Agreement." (Declaration of Meytal Sutton, Ex. A at 2.) The Agreement does not contain a termination clause. (Counterclaims ¶ 23 ("The Photograph Use Agreement does not have a termination clause.").) Also absent from the Photograph Use Agreement is any reference to pricing or geographical limits with respect to sale of Jovani dresses in connection with use of the photographs.

"Jovani has a policy against advertising discounts for international sales below the manufacturer's suggested retail price by its authorized online retailers." (<u>Id.</u> ¶ 30.) "At all pertinent times MissesDressy was aware of Jovani's policy against advertising discounted prices." (<u>Id.</u>) "In December 2012, Jovani sent MissesDressy a letter regarding selling internationally." (<u>Id.</u> ¶ 31.) "The letter stated that MissesDressy on its website offered detrimental pricing structures for foreign countries without consulting with Jovani first." (<u>Id.</u>) "Jovani informed MissesDressy that such price structures threatened Jovani's business in a significant way." (<u>Id.</u>) "Despite being aware of Jovani's policy on discounted prices, MissesDressy continued to discount." (<u>Id.</u> ¶ 32.) "In

December 2012 Jovani sent a letter to all of its online retailers, that Jovani does not allow discounting or sales promotion of any kind on its dresses." (Id. ¶ 33.) "Jovani warned that if any online retailer is found selling internationally without written consent from Jovani and/or below the MSRP for the jurisdiction sold to, Jovani reserves the right to place their account on hold, suspend their access to inventory and close their account going forward without notice or warning." (Id.) "MissesDressy was fully aware of Jovani's policy against such discounted prices." (Id. ¶ 36.) "In June 2013, Jovani sent a letter to all of its online retailers regarding its new International Web Sale Policy which prohibited sale by Jovani online retailers to a list of 20 foreign countries." (Id. ¶ 37.) "In June 2013, MissesDressy terminated its relationship as an authorized retailer of Jovani because it no longer intended to follow Jovani's policies for authorized retailers." (Id. ¶ 39.) "MissesDressy also relayed to Jovani in its termination email that the reason it discontinued being a Jovani customer was in order to sell off its inventory." (Id. ¶ 40.) "MissesDressy informed Jovani that it intended to sell off the inventory to whoever wants to pay." (Id.) "Upon information and belief, MissesDressy sold its remaining inventory at discounted prices to prohibited foreign countries." (Id. ¶ 41.) "Even post termination by MissesDressy, Jovani

7

honored MissesDressy's special orders which had been placed
prior to June 28, 2013." (Id. ¶ 42.)  "After the termination,
Jovani offered to make every effort to assist MissesDressy in
any way that it possibly could to sell off its remaining stock
as long as MissesDressy abided by Jovani's policy."[3]  (Id. ¶ 43.)
"In August 2013, Jovani fulfilled MissesDressy's special orders
placed prior to June 28, 2013 and subsequently closed
MissesDressy's account." (Id. ¶ 44.)  "MissesDressy continued
advertising the discounted Jovani dresses after the termination
of its accounts with Jovani." (Id. ¶ 45.)  "Such discounting on
the MissesDressy website as well as sale to the prohibited
countries violated Jovani's policy." (Id. ¶ 46.)  "Although
MissesDressy was free to sell off its products to whoever it
wished at whatever price, it could not do this by using Jovani's
copyrighted images." (Id. ¶ 47.)  "In January 2014, Jovani
asked MissesDressy to stop advertising discounted prices using
Jovani images on its website." (Id. ¶ 48.)  "MissesDressy
informed Jovani that it refused to abide by the policy and
stated that it would continue to advertise the discounted prices
since it had to sell off the inventory." (Id. ¶ 49.)  "Once
Jovani found out that MissesDressy was also involved in
advertising of discounted prices while using Jovani's

---

[3] The Counterclaims do not define or otherwise describe the specific policy
being referred to.

copyrighted images, Jovani was forced to take action in order to uphold its copyrights." (Id. ¶ 51.) "In January 2014 Jovani sent a DMCA Notice to the internet service provider for the MissesDressy site to take down the Jovani photographs." (Id. ¶ 52.)

Jovani's Second[4] Counterclaim is for breach of contract against MissesDressy and alleges that MissesDressy's discounting of prices to international customers "constitutes a material breach by MissesDressy of the policy against advertising discounted prices" and a breach of the implied covenant of good faith and fair dealing. (Id. ¶¶ 63-64.) Claims Three through Thirty-Three allege copyright infringement against MissesDressy and Sutton. (Id. ¶¶ 66-472.) The allegations assert that although MissesDressy continued to use Jovani's photographs to sell off remaining inventory, permission to use the photographs at that time was contingent on MissesDressy adhering to Jovani's policies for its customers. (Id.) Jovani alleges that MissesDressy's permission to use Jovani's photographs terminated as a result of a breach of Jovani's policies. (Id.)

Finally, Jovani's Thirty-Fourth claim is a trademark infringement claim against MissesDressy. (Id. ¶¶ 473-88.)

---

[4] The First Counterclaim also asserts a breach of contract claim against MissesDressy.  MissesDressy did not move to dismiss that Claim.

Jovani alleges that the Photograph Use Agreement granted MissesDressy the right to use Jovani's logo and watermark on MissesDressy's website.  (Id. ¶ 474.)  In fact, the Agreement required that online retailers may not crop or remove any watermarks or logos.  (Id. ¶ 476.)  Jovani alleges that MissesDressy continued to use the Jovani logo and watermark after terminating its account to sell off remaining inventory. (Id. ¶ 479.)  Similar to the copyright infringement claims, Jovani alleges that permission to use the logo and watermark during the sell-off period was contingent on MissesDressy adhering to Jovani's policies for authorized customers, and that such permission terminated when MissesDressy sold Jovani dresses on the MissesDressy website at discounted prices.  (Id. ¶¶ 480-81.)

On June 16, 2014, MissesDressy and Sutton moved to dismiss Jovani's Counter and Third-Party Claims Two through Thirty-Four. (ECF Nos. 15-17 ("Motion").)  The Motion argues that the claims against Sutton are legally flawed and insufficient as a matter of law.  (See, e.g., Motion at 2, 6-7.)  Although Counts Three through Thirty-Three include Sutton as a defendant for direct copyright infringement, "Jovani has failed to allege any act or display by Sutton apart from MissesDressy's display on its website."  (Id. at 7.)  Instead, the allegations against Sutton are supported by "information and belief" only, and in

"conclusory" fashion merely allege that "MissyDressy and Meytal Sutton displayed the copyrighted photograph on its website after its permission to use photographs had terminated." (Id. (quoting Counterclaims ¶ 75).)

With respect to Count Two, breach of contract, MissesDressy argues that the claim must be dismissed because Jovani fails to assert an essential element of the claim: breach of the Photograph Use Agreement. (Id. at 9.) MissesDressy argues that the Photograph Use Agreement is fully integrated and was drafted by Jovani, such that ambiguities, if any, must be construed against Jovani. (Id. 8-9.) Because there are no provisions in the Photograph Use Agreement regarding discounting prices (nor any allegations that the Agreement contains such provisions), even if MissesDressy had violated a Jovani policy by discounting prices, doing so would not constitute breach of the Photograph Use Agreement. (Id. at 9.)

With respect to Counter and Third-Party Claims Three through Thirty-Three, the copyright infringement claims against MissesDressy and Sutton, the Motion argues that those claims must fail for the following reasons. First, the Photograph Use Agreement does not contain a termination clause or any provision limiting its duration, and the Counterclaims do not contain allegations of contrary intent. (Id. at 10.) Nor do the

Counterclaims allege breach or termination of the Photograph Use Agreement. (Id.)  Further, there are no facts alleged to support the bald "legal conclusion that a breach of a 'policy' (especially those instituted after the transaction and not agreed to by MissesDressy) could amount to a breach of the Photograph Use Agreement, let alone a material breach."  (Id.)

Second, the Motion argues that the Copyrights were not registered in accordance with the Statute.  (Id.)  Specifically, the Motion argues that, instead of filing a group registration, Jovani filed a VA[5] registration for a group of photographs.  (Id. at 12.)  The Motion argues that Jovani's registrations on Form VA are governed by 17 C.F.R. § 202.3(b)(10), which contains a list of registration requirements.  (Id.)  Movants argue that Jovani has not complied with the registration requirements articulated in Section 202.3(b)(10).  (Id. at 12-13.) Accordingly, Movants argue that "[a]bsent a clearly applicable statutory or regulatory exception that would allow for the extension of these [catalog] registrations to the additional contributions [of constituent photographs contributed by unnamed authors], the registrations here are invalid" and thus Jovani's claims must be dismissed.  (Id. at 13.)

---

[5] The Copyright Office instructs applicants to "[u]se Form VA for copyright registration of published or unpublished works of the visual arts."  (See eCO Registration System, United States Copyright Office, http://copyright.gov/eco/ (last visited Mar. 30, 2016).)

Finally, with respect to Counterclaim Thirty-Four, trademark infringement against MissesDressy, the Motion argues that the Trademark infringement claim fails for many of the same reasons that the copyright infringement claims fail: use of Jovani's name and logo was permitted by the license.  (<u>Id.</u> at 14.)

## II.   <u>Relevant Law</u>

### A. <u>Motion to Dismiss Standard</u>

For a claim to survive a motion brought pursuant to Rule 12(b)(6), the party advancing it must have pleaded "enough facts to state a claim to relief that is plausible on its face." (<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).)  "A claim has facial plausibility," the Supreme Court has explained,

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

(<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556-57).)  "[A] plaintiff's obligation to provide

13

the grounds of his entitlement to relief requires more than
labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." (Twombly, 550 U.S.
at 555 (internal quotation marks omitted).) "In keeping with
these principles," the Supreme Court stated,

> [A] court considering a motion to dismiss can choose
> to begin by identifying pleadings that, because they
> are no more than conclusions, are not entitled to the
> assumption of truth. While legal conclusions can
> provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-
> pleaded factual allegations, a court should assume
> their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

(Iqbal, 556 U.S. at 679.)

In considering a motion to dismiss under Rule 12(b)(6), the
Court accepts as true all well-pleaded factual allegations and
draws all reasonable inferences in favor of the non-moving
party. (See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1
(2002); see also Gerdau Ameristeel U.S. Inc. v. Ameron Int'l
Corp., No. 13-CV-7169, 2014 WL 3639176, at *2 (S.D.N.Y. July 22,
2014) ("Federal Rule of Civil Procedure 12(b) applies equally to
claims and counterclaims; therefore, a motion to dismiss a
counterclaim is evaluated under the same standard as a motion to
dismiss a complaint.") (citations omitted).) However, this
principle is "inapplicable to legal conclusions," (Iqbal, 556
U.S. at 678), which, like the complaint's "labels and

conclusions," (Twombly, 550 U.S. at 555), are disregarded.  Nor
should a court accept as true a legal conclusion couched as a
factual allegation. (Id.)

"In considering a motion to dismiss for failure to state a
claim pursuant to Rule 12(b)(6), a district court may consider
the facts alleged in the complaint, documents attached to the
complaint as exhibits, and documents incorporated by reference
in the complaint." (DiFolco v. MSNBC Cable L.L.C., 622 F.3d
104, 111 (2d Cir. 2010).)  Additionally, "[w]here a document is
not incorporated by reference, the court may never[the]less
consider it where the complaint relies heavily upon its terms
and effect, thereby rendering the document integral to the
complaint." (Id. (internal quotation marks omitted).)  However,
"even if a document is 'integral' to the complaint, it must be
clear on the record that no dispute exists regarding the
authenticity or accuracy of the document." (Id. (quoting
Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)).)

### B. Copyright Infringement

"A claim of copyright infringement under federal law
'requires proof that (1) the plaintiff had a valid copyright in
the work allegedly infringed and (2) the defendant infringed the
plaintiff's copyright' by violating one of the exclusive rights

that 17 U.S.C. § 106 bestows upon the copyright holder."
(Island Software and Computer Serv., Inc. v. Microsoft Corp.,
413 F.3d 257, 260 (2d Cir. 2005) (citation omitted).)  Courts in
this District have held that a copyright claim must allege "(1)
which specific original works are the subject of the copyright
claim, (2) that plaintiff owns the copyrights in those works,
(3) that the copyrights have been registered in accordance with
the statute, and (4) by what acts during what time the defendant
infringed the copyright."  (Int'l Diamond Importers, Inc. v.
Oriental Gemco (N.Y.), Inc., 64 F. Supp. 3d 494, 510 (S.D.N.Y.
2014) (citations omitted).)  A certificate of registration made
before or within five years after first publication of a work
constitutes prima facie evidence of the validity of the
copyright and the facts stated within the certificate.  (17
U.S.C. § 410(c).)  Although a certificate of registration serves
as prima facie evidence of ownership of a valid copyright, that
presumption is rebuttable.  (See, e.g., id.; Scholz Design, Inc.
v. Sard Custom Homes, LLC, 691 F.3d 182, 186 (2d Cir. 2012).)

    Where the elements of a copyright claim are established,
"the existence of a license to engage in the challenged copying
may be raised as a valid defense to an infringement claim."
(Powlus v. Chelsey Direct, LLC, No. 09 Civ. 10461(PKC), 2011 WL
135822, at *3 (S.D.N.Y. Jan. 10, 2011) (citing Tasini v. New
York Times Co., Inc., 206 F.3d 161, 170-71 (2d Cir. 2000)); see

16

also Spinelli v. Nat'l Football League, 96 F. Supp. 3d 81, 128 (S.D.N.Y. Mar. 27, 2015) ("[I]t is well established that use of a copyrighted work within the scope of a valid license is non-infringing as a matter of law.") (citation omitted).) "Dismissal of a claim for copyright infringement is proper where a contract underlying the suit clearly and unambiguously demonstrates the existence of the defendant's license to exploit the plaintiff's copyrights and where plaintiff has not shown any limitation on that license." (Powlus, 2011 WL 135822, at *3 (citations omitted); see also Spinelli, 96 F. Supp. 3d at 121 (same).)

### C. Breach of Contract

State law governs the interpretation of licensing agreements. (See, e.g., Powlus, 2011 WL 135822, at *4-6 (citation omitted).) Here, the Photograph Use Agreement is governed by New York law. (Sutton Decl., Ex. A at 2.) Neither party has argued that New York law should not apply.

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." (Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015) (citation and

internal quotation marks omitted).)  "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." (<u>Greenfield v. Philles Records, Inc.</u>, 98 N.Y.2d 562, 569 (N.Y. 2002).)  "The best evidence of what parties to a written agreement intend is what they say in their writing." (<u>Id.</u> (citation omitted).)  "Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." (<u>Id.</u>)  "Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." (<u>Riverside S. Planning Corp. v. CRP/Extell Riverside. L.P.</u>, 13 N.Y. 3d 398, 404 (N.Y. 2009) (internal quotations and citation omitted).)  A contract is unambiguous on its face if it is "reasonably susceptible of only one meaning." (<u>Greenfield</u>, 98 N.Y. 2d at 570.)  Contractual silence on an issue does not in and of itself render the contract ambiguous.  (<u>Id.</u> at 573 ("Furthermore, Thomas' suggestion that the failure of a contract to address certain categories of royalties allows a court to look beyond the four corners of the document to discern the parties' true intent conflicts with our established precedent that silence does not equate to contractual ambiguity." (citing <u>Reiss v. Fin. Performance Corp.</u>, 97 N.Y.2d 195, 199 (N.Y. 2001); <u>Trustees of</u>

<u>Southampton v. Jessup</u>, 173 N.Y. 84, 90 (N.Y. 1903) ("an
ambiguity never arises out of what was not written at all, but
only out of what was written so blindly and imperfectly that its
meaning is doubtful")).)

Material breach of a covenant in a licensing agreement
allows the licensor to rescind the license and hold the licensee
liable for infringement for uses of the work thereafter.
(<u>Graham v. James</u>, 144 F.3d 229, 237 (2d Cir. 1998) (citations
omitted).)  "Under New York law, rescission is permitted if the
breach is 'material and willful, or, if not willful, so
substantial and fundamental as to strongly tend to defeat the
object of the parties in making the contract.'"  (<u>Id.</u> (citation
omitted).)  However, even if the licensee materially breaches
the licensing agreement such that the licensor is entitled to
rescission, rescission does not occur without some affirmative
step taken on the licensor's part.  (<u>Id.</u> at 237-38 (citations
omitted).)  "New York law does not presume the rescission or
abandonment of a contract and the party asserting rescission or
abandonment has the burden of proving it."  (<u>Id.</u> at 238
(citation omitted).)

"Under New York law, parties to an express contract are
bound by an implied duty of good faith, but breach of that duty
is merely a breach of the underlying contract."  (<u>Cruz v.</u>

19

FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013) (citation omitted).)  "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." (Id. (citation omitted) (omission in original).)  "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant."  (Id.; see also Yang Chen v. Hiko Energy, LLC, Nos. 14 CV 1771(VB), 14 CV 2042(VB), 2014 WL 7389011, at *7 (S.D.N.Y. Dec. 29, 2014).)

### D. Trademark Infringement

"Section 32(1) of the Lanham Act governs claims for infringement of a registered trademark, prohibiting the use in commerce of 'any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.'" (Yurman Studio, Inc. v. Castaneda, 591 F. Supp. 2d 471, 486 (S.D.N.Y. 2008) (quoting 15 U.S.C. § 1114(1)).)  "To prevail on a claim of trademark infringement, a plaintiff must show that the defendant

(1) without permission, copied, reproduced, or imitated the plaintiff's (2) registered trademark in commerce (3) as part of the sale or distribution of goods or services (4) and that such use is likely to cause confusion between the two marks." (<u>Streetwise Maps, Inc. v. Vandam, Inc.</u>, 159 F.3d 739, 742 (2d Cir. 1998); <u>see also</u> 15 U.S.C. § 1114(1)(a).)

III.   <u>Application</u>

A. <u>Copyright and Breach of Contract Claims</u>[6]

Although Counterclaim Two alleges breach of contract, Jovani's arguments in opposition to the Motion to Dismiss seem to conflate breach of contract and copyright infringement.  For example, Jovani does not address breach of contract in its opposition materials.  (<u>See also</u> Reply at 1 ("Jovani does not oppose the motion to dismiss the claim for breach of the Photograph Use Agreement.").)  Instead, Jovani's copyright claims are premised on allegations that Counterclaim Defendants posted Jovani's copyrighted images on MissesDressy's website after any license for such use was rescinded and terminated. (Opp. at 7.)  For example, Jovani argues that MissesDressy's

---

[6] The Court declines to rule on the validity of the copyright registrations because, even assuming that the registrations are valid, Jovani has not sufficiently alleged claims for breach of contract or copyright infringement, rendering any finding on the validity of the registrations unnecessary.

failure to abide by Jovani's conditions, such as Jovani's various policies regarding advertising discounted prices internationally, resulted in rescission of permission to use Jovani's copyrighted images.  (See id. at 10.)   Alternatively, Jovani argues that MissesDressy's violation of Jovani's policies was so material that it rendered the contract null and void. (Id.)

The Court will rely on the Photograph Use Agreement in analyzing the Motion to Dismiss because, although not incorporated by reference into the Counterclaims, Jovani "relies heavily upon its terms and effect, . . . rendering the document integral to the [counterclaims]" and Jovani does not dispute the authenticity or accuracy of the copy of the Photograph Use Agreement attached to the Sutton Declaration.  (See DiFolco, 622 F. 3d at 111.)  The Photograph Use Agreement is a two-page form document that appears to be drafted by Jovani.  (See Sutton Decl., Ex. A.)  The Photograph Use Agreement contains a provision entitled "Entire Agreement," and Movants assert that this provision provides that the written document "contains the entire Agreement between the Parties and supersedes all prior written agreements with respect to the subject matter herein." (Motion at 10-11 (quoting Photograph Use Agreement).)  Jovani has not contested Movants' assertions regarding Jovani being the

drafter and that the Agreement contains an integration clause as described.

As Jovani admits, it cannot rely on any termination clause in the Photograph Use Agreement to support Jovani's claims, because the Photograph Use Agreement does not contain a termination clause.  (See, e.g., Counterclaims ¶ 23.)  Instead, Jovani argues that MissesDressy's conduct is sufficient to constitute a material breach and allow for rescission of the license.  Jovani, however, has failed to allege facts that would support a claim for rescission of the Photograph Use Agreement.  Although material breach of a covenant to a contract will allow a licensor to rescind the license, (Graham, 144 F.3d at 237), Jovani alleges no terms in the Photograph Use Agreement that Counterclaim Defendants breached – or materially breached at that.  Jovani's allegations are instead that MissesDressy breached "the policy against advertising discounted prices," which is nowhere contained in the Photograph Use Agreement.  (See Counterclaims ¶ 63 (emphasis added); see also id. ¶¶ 71, 85, 99, 112, 125, 138, 151, 164, 177, 192, 205, 218, 231, 244, 257, 270, 283, 296, 309, 322, 335, 348, 361, 374, 387, 400, 413, 426, 439, 452, 465.)  Jovani does not allege that any of the policies that Movants allegedly breached were included in the Photograph Use Agreement.  Moreover, review of the Photograph Use Agreement plainly demonstrates that there are no references

to any such policies contained in the document.  Instead, it appears that Jovani is attempting to demonstrate breach of an integrated agreement by alleging conduct that is plainly not governed by that agreement.  As such, with no support from the language of the Photograph Use Agreement for an argument that Jovani's policies regarding advertising discounted prices or selling internationally were somehow included or essential to the Agreement, the allegations cannot support a finding that any "breach" of said extraneous policies was "so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract."  (See Graham, 144 F.3d at 236-37; see also Paramount Pictures Corp. v. Puzo, No. 12 Civ. 1268(AJN), 2012 WL 4465574, at *9 (S.D.N.Y. Sept. 26, 2012).)[7] Accordingly, because Jovani does not allege that any of the terms of the Photograph Use Agreement were breached, the Counterclaims do not sufficiently plead breach or rescission of the Photograph Use Agreement.

With respect to termination of the license, the terms of the Photograph Use Agreement plainly and unambiguously

---

[7] Even if the allegations were sufficient to support a finding of a breach, which they are not, the Counterclaims further fail to allege that Jovani took some affirmative step to rescind the Photograph Use Agreement.  (See Graham, 144 F.3d at 237-38; Powlus, 2011 WL 135822, at *6.)  In fact, Jovani's allegations tend to argue the contrary.  (See, e.g., Counterclaims ¶ 43 ("Jovani offered to make every effort to assist MissesDressy in any way that it possibly could to sell of its remaining stock as long as MissesDressy abided by Jovani's policy.").)

establish, and Jovani explicitly alleges, that the Photograph
Use Agreement does not contain a termination clause.
MissesDressy in turn argues that the lack of a termination
clause renders the Photograph Use Agreement a perpetual license.
(Motion at 9-10.)  New York law, however, will not construe a
license that is vague as to its duration as a perpetual license
as a matter of law.  (Chapman v. New York State Div. for Youth,
546 F.3d 230, 237 (2d Cir. 2008) ("In the absence of a clear
provision, courts are reluctant to declare a perpetual license
as a matter of law."); see also Compania Embotelladora Del
Pacifico, S.A. v. Pepsi Cola Co., 607 F. Supp. 2d 600, 603
(S.D.N.Y. 2009) ("[I]f the parties to a contract intend for it
to be perpetual, they must expressly say so.") (collecting
cases.)  In New York, the general rule is that a contract that
does not contain a termination provision is terminable upon
reasonable notice.  (See, e.g., Laugh Factory, Inc. v. Basciano,
608 F. Supp. 2d 549, 556 (S.D.N.Y. 2009); Rogers v. HSN Direct
Joint Venture, No. 97 Civ. 7710(LLS), 1999 WL 595533, at *1
(S.D.N.Y. Aug. 6, 1999) ("If the termination provision [for a
contract of indefinite duration] is not in writing, and is
therefore void, then the contract has no provision for its
termination. In that event, courts in New York treat the
contract as being made for a reasonable time and subject to
termination upon reasonable notice."); see also Barton d/b/a

<u>Sterling Worldwide v. Concept Labs., Inc.</u>, No. 08-CV-591-JTC, 2010 WL 502831, at *4 (W.D.N.Y. Feb 10, 2010) (same).)

Here, the unambiguous language of the Photograph Use Agreement does not address termination, and thus the license is terminable upon reasonable notice. (<u>See, e.g.</u>, <u>Laugh Factory</u>, 608 F. Supp. 2d at 556.) Jovani, however, has failed to allege facts demonstrating termination or reasonable notice of any such termination. Accordingly, Jovani's claims that breaches of Jovani's policies resulted in termination of the Photograph Use Agreement are unsupported and must be dismissed. (<u>See, e.g.</u>, <u>Powlus</u>, 2011 WL 135822, at *3 ("Dismissal of a claim for copyright infringement is proper where a contract underlying the suit clearly and unambiguously demonstrates the existence of the defendant's license to exploit the plaintiff's copyrights and where plaintiff has not shown any limitation on that license.").)

Despite not having pled termination or reasonable notice, Jovani argues that the Photograph Use Agreement, which Jovani contends does not extend privileges to a party who is not a customer, terminates when the customer ceases to be a customer. (Opp. at 8.) Jovani attempts to incorporate parol evidence regarding how Jovani treated customers to demonstrate such. (<u>Id.</u> at 7.) These arguments are improper attempts to revise the

Photograph Use Agreement to include a termination clause where
there is none.  (<u>See, e.g.</u>, <u>Riverside</u>, 13 N.Y. 3d at 404
(stating that "Courts may not by construction add or excise
terms, nor distort the meaning of those used and thereby make a
new contract for the parties under the guise of interpreting the
writing"); <u>Greenfield</u>, 98 N.Y. 2d at 570 (stating that "silence
does not equate to contractual ambiguity").)[8]  Jovani further
relies on <u>Chapman</u> to support its argument that the Photograph
Use Agreement was intended to be terminated when MissesDressy
ceased to be a customer.  (Opp. at 7-8.)  Jovani's reliance on
<u>Chapman</u>, however, is misplaced.  The Second Circuit in <u>Chapman</u>
analyzed a contract for services whereby a company would teach a
client certain training techniques so that the client could
subsequently teach the training techniques to its staff.  The
training would continue for a specific duration, and the client
was allowed to reproduce all training materials.  The Second
Circuit found that the contract was ambiguous on its face
regarding whether the license to reproduce training materials
terminated when the contract for services would terminate, or
whether the license was intended to continue for a reasonable
period of time after completion of the services to allow for
further training of the client's staff.  (<u>Chapman</u>, 546 F.3d at

---

[8] Such an argument further contradicts Jovani's own allegations that the
Agreement does not contain a termination clause.

236.)  The contract at issue here, on the other hand, differs
from the contract in Chapman in two key respects: here, (1) the
contract is not ambiguous on its face with respect to the
duration of the license, because (2) unlike the contract at
issue in Chapman, there is no express language regarding the
duration or termination of the Photograph Use Agreement.
Chapman therefore does not alter this Court's finding that the
Photograph Use Agreement, silent as to termination, is
terminable at will upon reasonable notice.  Accordingly, because
Jovani has not alleged facts that, if true, would establish that
Jovani terminated the Photograph Use Agreement upon reasonable
notice, the Counter and Third-Party breach of contract and
copyright infringement claims must be dismissed.

Jovani's allegations that MissesDressy breached the
covenant of good faith must be dismissed as well.  Jovani's
complaint alleges both a breach of contract and a breach of the
implied covenant of good faith and fair dealing based on the
same facts (breach of Jovani's policies).  (See Counterclaims ¶¶
60-65.)  Accordingly, the claim for breach of the implied
covenant of good faith would be dismissed as redundant if a
breach of contract claim were found to be alleged and, for many
of the same reason articulated above, independently dismissed as

meritless.  (See, e.g., Cruz, 720 F.3d at 125; Yang Chen, 2014 WL 7389011, at *7; see also Rooney, 784 N.Y.S. 2d at 194.)[9]


### B. Trademark Infringement

Jovani cites to no legal provision in connection with its trademark claim, however the Counterclaims reference the relevant section of the Lanham Act when alleging venue.  (See Counterclaims ¶ 2.)  Jovani explicitly alleges that it granted MissesDressy the right to use Jovani's logo and watermark on MissesDressy's website.  (Id. ¶ 474.)  In fact, Jovani alleges that MissesDressy was required to use the Jovani logo and

---

[9] Even if Jovani had stated copyright infringement claims, which it has not, the claims against Sutton would be dismissed as vague and conclusory, as they state in full:

- Upon information and belief, Meytal Sutton is President of MissesDressy and is located at 69-62 Main Street, Flushing, NY 11367.

- Upon information and belief, MissesDressy and Meytal Sutton displayed the copyrighted photograph on its website after its permission to use photographs had terminated. Such acts constitute copyright infringement.  Upon information and belief, the infringement of Jovani's copyrights by MissesDressy and Meytal Sutton is and has been knowing, willful and intentional.

(Counterclaims ¶¶ 5, 75-76, 89-90, 102-103, 115-116, 128-129, 141-142, 154-155, 167-168, 182-183, 195-196, 208-209, 221-222, 234-235, 247-248, 260-261, 273-274, 286-287, 299-300, 312-313, 325-326, 338-339, 351-352, 364-365, 377-378, 390-391, 403-404, 416-417, 429-430, 442-443, 455-456, 468-469.)  While predicating allegations "upon information and relief" "does not [in and of itself] eviscerate the sufficiency of a complaint," (see, e.g., Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC, 23 F. Supp. 3d 344, 355 (S.D.N.Y. 2014)), the specific allegations against Sutton are mere legal conclusions unsupported by facts that would put Sutton on notice of the allegedly infringing acts she took.  (See, e.g., Palmer Kane LLC v. Scholastic Corp., No. 12 CV 3890, 2013 WL 709276, at *2 (S.D.N.Y. Feb. 27, 2013); Marvullo v. Gruner & Jahr, 105 F. Supp. 2d 225, 228 (S.D.N.Y. 2000).)

watermark, the very subjects of the trademark infringement
claim, pursuant to the terms of the Photograph Use Agreement.
(See, e.g., Counterclaims ¶¶ 473-88; id. ¶ 476-77 ("The
Photograph Use Agreement required that online retailers may not
crop or remove any watermarks or logos. Another requirement of
the Photograph Use Agreement was that online retailers must use
the hot pink JOVANI logo to list Jovani as a designer. The pink
logo was available for download on the FTP website.").)  Jovani
alleges, however, that permission to use the logo and watermark
subsequently became conditioned on adherence to Jovani's
"policies."  (Id. ¶¶ 480-81 ("MissesDressy's permission to use
the Jovani logo and watermark during its sell-off period was
contingent on MissesDressy adhering to Jovani's policies for its
authorized customers. MissesDressy was aware of Jovani's policy
against discounting. Once MissesDressy started selling the
Jovani dresses on their website at discounted prices, the
permission to use the Jovani logo and watermark terminated.").)
Because Jovani's trademark infringement claim relies on the same
theory that the Court has already rejected – that permission
under the Photograph Use Agreement terminated or was rescinded
as a result of MissesDressy's alleged violations of Jovani's
policies - Jovani's trademark infringement claim is dismissed as
well.  (See also 15 U.S.C. § 1114 (allowing suit for trademark

infringement when use in commerce of trademark was done "<u>without</u> <u>the consent</u> of the registrant") (emphasis added).)


### C. <u>Leave to Amend</u>

A court "should freely give leave" to replead "when justice so requires." (F.R.C.P. 15(a)(2).)  But "it is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (<u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 200 (2d Cir. 2007) (internal citations omitted).  Repleading would be futile when the "problem with [the pleader's] causes of action is substantive." (<u>See, e.g.</u>, <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000).)

Here, dismissal without leave to replead is appropriate based on the plain language of the contract: "the problem with [Jovani's] causes of action is substantive; better pleading will not cure it." (<u>Id.</u>; <u>Cram v. Pepsico Executive Income Deferral Compensation Program</u>, No. 08-CV-10627 (CS), 2010 WL 4877275, at *9 (S.D.N.Y. Aug. 9, 2010) (dismissing without leave to amend where dismissal was based on the plain language of the contract).)

IV.   <u>Conclusion</u>

    MissesDressy and Sutton's Motion to Dismiss in part is GRANTED.  Accordingly, Jovani's Counter and Third-Party Claims Two through Thirty-Four are DISMISSED.  MissesDressy has thirty days from the date of this Order to Answer the remaining Counterclaim.

SO ORDERED.

Dated:     March 30, 2016
           New York, New York.


                          _Deborah a. Batts_
                          Deborah A. Batts
                  United States District Judge